UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

STEVEN BARRY RUZA,

                   Petitioner,                 Case No. 1:20-cv-808

v.                                     Honorable Hala Y. Jarbou

MICHIGAN DEPARTMENT OF
CORRECTIONS,

                   Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. The Respondent has filed an answer (ECF No. 8) along with the state-court record (ECF Nos. 9-1 - 9-16), pursuant to Rule 5, Rules Governing § 2254 Cases. Following an initial review of the record, the Court ordered Respondent to supplement the record, and Respondent has done so. (ECF Nos. 14-1 - 14-48.) After reviewing the state court record, I conclude that the petition is not barred by the one-year statute of limitations, as urged by the Respondent, nor are the issues raised procedurally defaulted. Nonetheless, I conclude that the petition fails to raise a meritorious federal claim and, therefore, is properly denied.

### Discussion

## I.    Factual Allegations

Petitioner's habeas petition is not a model of clarity.  The form calls for Petitioner to set forth "every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States."  (Pet., ECF No. 1, PageID.9.)  Petitioner responds with only the following: "I was convicted with a state criminal statute when I was to be prosecuted under Dodd Frank."[1]  (*Id.*)  The form invited Petitioner to provide supporting facts.  He responded as follows:

> Dodd Frank-12 CFR 1015, 12 CFR 1091.100 and 12 U.S.C. 5481 A vii says I was covered and my liability was limited to a civil remedy.  New evidence has risen showing I never agreed to restitution figure; I was defrauded; innocence; ineffective asst. of counsel; investigative & prosecutorial misconduct.

(*Id.*)

Respondent interprets Petitioner's cryptic recitation of grounds as raising four issues:

> I.    Dodd Frank preempts Petitioner's state prosecution for conducting a criminal enterprise.
>
> II.    Petitioner did not agree to the restitution amount.
>
> III.    Petitioner's counsel provided ineffective assistance.

---

[1] "Dodd Frank" is Petitioner's shorthand reference to the Dodd-Frank Wall Street Reform and Consumer Protection Act, 124 Stat. 1376 (codified at 12 U.S.C. § 5301 et seq.) (herein Dodd-Frank).  The Supreme Court describes Dodd-Frank as follows: "Passed in the wake of the 2008 financial crisis, Dodd-Frank aimed to 'promote the financial stability of the United States by improving accountability and transparency in the financial system.'"  *Digital Realty Trust, Inc. v. Somers*, 138 S.Ct. 767, 773 (2018).

IV.    The prosecutor committed misconduct in investigating and presenting the claims against Petitioner.

(Response, ECF No. 8, PageID.74 - 84.)  After reviewing Petitioner's submissions to this Court and his submissions to the state courts, the undersigned concludes that Respondent's interpretation of the petition is reasonable, and the undersigned will address the issues as Respondent has described them.

On September 2, 2015, during a hearing in Michigan's 48th District Court, Petitioner pled guilty to one count of conducting a criminal enterprise, in violation of Mich. Comp. Laws § 750.159i, one of several charges raised against Petitioner in a prosecution in the Oakland County Circuit Court.  (Plea Hr'g Tr., ECF No. 9-2.)  The plea agreement included many terms, including an agreement to a maximum minimum sentence of forty months, a prompt down payment of $250,000.00 on Petitioner's "to-be-determined" restitution obligation, and Petitioner's submission to psychological testing.  In exchange for Petitioner's plea, the prosecutor agreed to drop all of the other charges.

Although Petitioner now claims otherwise, there is nothing in the plea agreement or the plea hearing transcript that suggests a term regarding total restitution or a term requiring the parties to agree to the total restitution amount or that the total restitution amount could not be settled without Petitioner's written permission.   To the contrary, the transcript makes clear that the amount of restitution remained to be determined and the plea in no way depended upon Petitioner's concurrence in the ultimate determination.

To understand the nature of Petitioner's challenges to his conviction requires an examination of the elements of the crime to which he entered his plea.  In *People v. Speed*, 952 N.W.2d 550 (Mich. Ct. App. 2020), the Michigan Court of Appeals described the statute and the elements of the crime as follows:

> MCL 750.159i provides in relevant part:
>
> (1)  A person employed by, or associated with, an enterprise shall not knowingly conduct or participate in the affairs of the enterprise directly or indirectly through a pattern of racketeering activity.
>
> A "pattern of racketeering activity" means not less than two incidents of racketeering to which all of the following characteristics apply:
>
> (i)   The incidents have the same or a substantially similar purpose, result, participant, victim, or method of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated acts.
>
> (ii)   The incidents amount to or pose a threat of continued criminal activity.
>
> (iii)  At least 1 of the incidents occurred within this state on or after the effective date of the amendatory act that added this section, and the last of the incidents occurred within 10 years after the commission of any prior incident, excluding any period of imprisonment served by a person engaging in the racketeering activity.  [MCL 750.159f(c).]

The term "racketeering," in turn, is defined as

> committing, attempting to commit, conspiring to commit, or aiding or abetting, soliciting, coercing, or intimidating a person to commit an offense for financial gain, involving any of the following:
>
> *   *   *

4

> (ii) A violation of . . . [MCL 750.452, MCL 750.455, MCL 750.457, MCL 750.458, or MCL 750.459], concerning prostitution.
>
> (jj) A violation of [MCL 750.462a et seq.] concerning human trafficking.  [MCL 750.159g, as amended by 2014 PA 300, effective January 1, 2015.]

In order to find defendant guilty of racketeering, then, the jury needed to find beyond a reasonable doubt that

> (1) an enterprise existed, (2) defendant was employed by or associated with the enterprise,  (3) defendant knowingly conducted or participated, directly or indirectly, in the affairs of the enterprise, (4) through a pattern of racketeering activity that consisted of the commission of at least two racketeering offenses that (a) had the same or substantially similar purpose, result, participant, victim, or method  of commission, or were otherwise interrelated by distinguishing characteristics and are not isolated acts, (b) amounted to or posed a threat of continued criminal activity, and (c) were committed for financial gain. [*People v Martin*, 271 Mich App 280, 321; 721 NW2d 815 (2006).]

*Speed*, 952 N.W.2d at 553–54.

Petitioner's crime was based on "assisting" mortgagors in their attempts to convince banks to modify mortgage terms because of the mortgagors' financial hardships.  The letters Petitioner sent to the banks to obtain the modifications, however, contained false information.  It does not appear Petitioner was ever – or at least not often – successful in his efforts.  The banks did not modify the mortgage terms and many mortgagors apparently lost their homes to foreclosure.  Petitioner's scheme left many victims, including the banks who might have been defrauded by Petitioner's false applications to modify mortgage terms and the mortgagors who paid

Petitioner for his doomed efforts to modify the mortgage terms.  The predicate acts[2] that formed the pattern of racketeering activity to which Petitioner pled guilty were not his fraudulent interactions with the mortgagors, they were specifically his fraudulent mailings to two specific banks.  (Plea Tr., ECF No. 9-2, PageID.132.)  It appears that the criminal charges that included Petitioner's fraudulent interactions with mortgagors were either dismissed as part of the plea agreement or considered part of the pattern of racketeering activity that supported the "criminal enterprise" charge, but not admitted at Petitioner's plea hearing.

Even though the criminal charges relating to Petitioner's defrauding of the mortgagors were dismissed or otherwise not expressly acknowledged at the plea hearing, the plea agreement required Petitioner to waive any challenge that the restitution amount was based on conduct other than the conduct to which he entered his plea.  Therefore, the damage to the mortgagors could be part of the restitution amount despite the dismissal of charges related to defrauding the mortgagors or

---

[2] The term "predicate acts" has a specific meaning in the context of the crime of conducting a criminal enterprise.  "Predicate acts" are the underlying acts that together form the pattern of activity that is used to conduct the affairs of the enterprise.  Unfortunately, the attorneys and the judge also used that term to describe the specific requirements Petitioner had to meet under the terms of the plea agreement for the sentencing limitations to take effect.  For example, at page 9 of the plea transcript, (Plea Tr., ECF No. 9-2, PageID.115), Petitioner's counsel uses the terms to describe the acts that form the pattern.  Then, at page 10 of the plea transcript, (*Id.*, PageID.116), the judge uses the term to describe the actions that Petitioner must take to bind the Attorney General to the sentence limitations contemplated by the plea agreement.  Thus, not every reference to "predicate acts" in the plea transcript is intended to describe Petitioner's criminal behavior.

Petitioner's "silence" regarding those claims.  The plea transcript, Petitioner's sentencing hearings, and the negotiation and ultimate resolution of the restitution amount, make very plain that the damage to the mortgagors was intended to be reflected in the restitution to be ordered by the court.

At the time the Oakland County Circuit Court determined Petitioner's term of imprisonment, the court had still not set the restitution amount.  (Sentencing Tr., ECF No. 9-3, PageID.328.)  The court sentenced Petitioner to one year in the county jail and five years' probation.  (*Id.*, PageID.326–327.)

Although the court did not determine a restitution amount at the time Petitioner's jail term was set, the parties had made some progress in negotiating the amount of restitution.  (Stip. & Order Approving Restitution, ECF No. 9-4, PageID.337, ¶¶ 3–5); *see also* Oakland Cnty. Cir. Ct. Register of Actions, ECF No. 9-1, PageID.104 (showing a stipulation and order regarding restitution entered December 18, 2015, and the judgment noting that restitution is "TBD").  While Petitioner was serving his year in county jail, his counsel and the Michigan Attorney General reached agreement regarding the restitution amount.  The agreement included terms that went beyond the restitution amount that Petitioner was obligated to pay.  The stipulation set out a total amount of damage that Petitioner had caused to his victims ($989,958.56).

Petitioner had already paid $250,000.00.  The State of Michigan agreed to pay the balance to the victims out of the state's Homeowner Protection Fund and, because the parties disputed how much of that damage might have been caused by the specific

criminal conduct for which Petitioner had entered his plea, Petitioner was obligated to pay restitution to the fund in the lesser amount of $360,000.00 (in addition to the $250,000.00 payment he had already made).

The agreement was signed by Petitioner's counsel, but Petitioner now contends he never agreed to those terms.  Nonetheless, after Petitioner was out of jail, he personally signed a stipulation and order amending the prior stipulation and order, changing the total reimbursement amount from $989,958.56 to $988,869.56. Petitioner now seems to claim that he did not sign the stipulation and that the signature on the state court pleading is a forgery.

Not long after Petitioner was released from jail, he committed other crimes in Ingham County.  He entered guilty pleas to those charges and, based on the same conduct, he entered a plea of guilty to violation of the terms of his probation in the Oakland County case.  On August 30, 2017, the Oakland County Circuit Court entered a judgment of sentence for the probation violation.  The court sentenced Petitioner to a prison term of three years, six months to twenty years on the criminal enterprise charge.  Petitioner was also required to pay restitution as previously ordered.

Michigan statutes permit the prosecutor, in this case the Michigan Attorney General, to collect restitution in the same way one might collect a civil judgment.  The prosecutor filed garnishments to facilitate collection from third parties.  Thereafter, Petitioner filed a series of motions seeking to modify restitution, to withdraw his plea agreement, to invalidate his sentence, and seeking other miscellaneous relief.  The

8

court denied relief or, in some instances, refused to consider the motions because of procedural improprieties.

Although Petitioner challenged the validity of the restitution order, Petitioner never raised his challenges for the specific purpose of attacking his conviction or sentence until his motion to withdraw plea filed in the trial court during February of 2018. (ECF No. 14-25.) In that motion, Petitioner mentioned the issues regarding ineffective assistance of counsel and a lack of agreement on restitution. He did not mention the preemption issue or the prosecutorial misconduct issue. The trial court refused to consider the motion because it was untimely as a motion to withdraw plea and not in compliance with the rules as a motion for relief from judgment. (Oakland Cnty. Cir. Ct. Order, ECF No. 14-26, PageID.1436.) Petitioner never appealed that decision.

Petitioner continued to challenge the Michigan Attorney General's efforts to collect the restitution; however, he did not directly challenge his conviction or sentence again until he filed a petition for writ of error *coram nobis*[3] on February 13, 2019. (ECF No. 14-39.) The petition raised for the first time in the trial court

---

[3] The Michigan Supreme Court's description of the writ of error *coram nobis* is not particularly enlightening. *See Teller v. Wetherell*, 6 Mich. 46, 49–51, 1858 WL 2331, at *3 (Mich. Nov. 16, 1858). Subsequent authority indicates that the writ never existed in Michigan generally and certainly not to correct alleged error in criminal cases. *See Dewey v. Smith*, 230 N.W. 180 (Mich. 1930) (citing with approval the detailed explanation in *Boyd v. Smyth*, 205 N.W. 522 (Iowa, 1925)). The present Michigan Court Rules and earlier iterations make clear that if the writ existed, it has been abolished. *See, e.g.*, Mich. Ct. R. 2.612(C)(4) and Staff Comment to 2020 Amendment; *Estate of Kasuba*, 258 N.W.2d 731, 734 n.5 (Mich. 1977).

9

Petitioner's Dodd-Frank preemption and prosecutorial misconduct claims. (*Id.*) The trial court immediately denied relief. (Oakland Cnty. Cir. Ct. Order, ECF No. 9-9.) Petitioner did not appeal that decision.

On March 22, 2019, Petitioner followed up his petition with a motion for relief from judgment under Michigan Court Rule 6.500 et seq. (ECF No. 9-10; ECF No. 14-40, ECF No. 14-41.) Petitioner's various submissions to the trial court in connection with the motion for relief from judgment raised, in some form, the issues he presents to this Court in his habeas petition. By order entered June 27, 2019, the trial court denied relief. (Oakland Cnty. Cir. Ct. Order, ECF No. 9-16, PageID.916.) Petitioner sought leave to appeal that decision in the Michigan Court of Appeals. That court denied leave by order entered October 30, 2019. (Mich. Ct. App. Op., ECF No. 9-16, PageID.893.) Petitioner did not seek leave to pursue the matter further in the Michigan Supreme Court.

On March 13, 2020, Petitioner filed a motion to set aside his sentence based on new evidence of his counsel's ineffectiveness. (ECF No. 14-42.) On July 9, 2020, Petitioner filed another motion for relief from judgment. (ECF No. 14-43.) The trial court denied the motion for relief from judgment in an opinion and order entered September 15, 2020 (Oakland Cnty. Cir. Ct. Op. & Order, ECF No. 14-45), and in a separate opinion and order entered the same date, declined to rule on the motion to set aside Petitioner's sentence. (Oakland Cnty. Op. & Order, ECF No. 14-46.)

Petitioner filed a new motion for relief from the restitution order on September 17, 2020. (ECF No. 14-47.) The trial court denied the motion by opinion and order entered December 29, 2020. (ECF No. 14-48.)

After Petitioner's 2019 motion for relief from judgment had been completely resolved, but before he commenced his 2020 round of motions for relief from judgment, the Michigan Department of Corrections paroled Petitioner. Thereafter, Petitioner filed in this Court an action against the State of Michigan under 42 U.S.C. § 1983. *Ruza v. People of the State of Michigan*, No. 1:20-cv-504 (W.D. Mich.). The Michigan Attorney General promptly moved to dismiss the complaint and, in response, on July 14, 2020, Petitioner filed what purported to be a petition for writ of habeas corpus. The Court did not permit Petitioner to create a hybrid civil rights/habeas action by amending his complaint to include the allegations of the habeas petition; instead, to avoid any prejudice to Petitioner, the Court directed the Clerk to create a separate habeas action based upon the petition that would be deemed filed as of the date Petitioner had added the petition to his civil rights action. It is this separate habeas action that is now before the Court. Respondent has answered the petition, submitted portions of the state court record, and, at the request of the Court, supplemented the state court record. In the interim, Petitioner has been discharged by the Michigan Department of Corrections. *See* Mich. Dep't of Corr. Offender Tracking Information System (OTIS), https://mdocweb. state.mi.us/otis2/otis2profile.aspx?mdocNumber=967073 (visited June 28, 2021).

## II.    Statute of Limitations

Respondent contends that Petitioner's application is barred by the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1), which became effective on April 24, 1996, as part of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA).  Section 2244(d)(1) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of
>
> > (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In most cases, § 2244(d)(1)(A) provides the operative date from which the one-year limitations period is measured.  Under that provision, the one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."   28 U.S.C.

§ 2244(d)(1)(A).  The judgment of sentence that Petitioner attacks was entered on August 30, 2017.[4]  (ECF No. 14-19.)  Petitioner never appealed that judgment.

Where a petitioner has failed to pursue an avenue of appellate review available to him, the time for seeking review at that level is counted under § 2244(d)(1)(A).  *See* 28 U.S.C. § 2244(d)(1)(A) (time for filing a petition pursuant to § 2254 runs from "the date on which the judgment became final by the conclusion of direct review *or the expiration of time for seeking such review*") (emphasis added).  But such a petitioner is not entitled to also count the ninety-day period during which he could have filed a petition for certiorari to the United States Supreme Court.  *See Gonzalez v. Thaler*, 565 U.S. 134, 152–53 (2012) (holding that, because the Supreme Court can review only judgments of a state's highest court, where a petitioner fails to seek review in the state's highest court, the judgment becomes final when the petitioner's time for seeking that review expires).  Under Michigan law, a party has six months in which to apply for leave to appeal to the Michigan Court of Appeals following entry of judgment in a criminal case.  *See* Mich. Ct. R. 7.205(A)(2)(a).  Accordingly, Petitioner's

---

[4] In *King v. Morgan*, 807 F.3d 154 (6th Cir. 2015), the Sixth Circuit held that a new sentence leads to a "new judgment [that] normally resets the statute-of-limitations clock." *Id.* at 159.  In addition, the new sentence allows that prisoner to attack both the new sentence and the undisturbed original conviction without any possibility of facing a second or successive bar. *Id.* at 157, *cited in Crangle v. Kelly*, 838 F.3d 673, 677–78 (6th Cir. 2016).  In *Rashad v. Lafler*, 675 F.3d 564, 567–68 (6th Cir. 2005), the Sixth Circuit addressed a scenario under which a defendant's challenges to his conviction were affirmed but the Michigan Supreme Court ordered resentencing.  In *Rashad*, the trial court did not conduct a new sentencing hearing for ten years after the supreme court's remand order.  The Sixth Circuit held that all of the petitioner's claims – both challenges to his convictions and challenges to his new sentence – only became final after his resentencing and appeals from that new sentence.  *Id.*

conviction became final on Wednesday, February 28, 2018.    Respondent acknowledges that is the date the conviction became final.  (Answer, ECF No. 8, PageID.44, 60.)  Petitioner had one year from February 28, 2018, or until February 28, 2019, in which to file his habeas application.  Petitioner filed on July 14, 2020.  Obviously, absent tolling, Petitioner filed more than one year after the time for direct review expired.

The running of the statute of limitations is tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2); *see also Duncan v. Walker*, 533 U.S. 167, 181–82 (2001) (limiting the tolling provision to only State, and not Federal, processes); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (defining "properly filed").  Respondent contends that Petitioner did not properly file an application for collateral review with respect to the judgment of conviction until March 22, 2019, three weeks after the period of limitation had expired.  Respondent correctly notes that, once the period of limitation has expired, Petitioner's motion for collateral review did not "toll, restart, or otherwise have any effect on the statute of limitations." (Answer, ECF No. 8, PageID.60) (citing *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 460 (6th Cir. 2012)).[5]

---

[5] The tolling provision does not "revive" the limitations period (i.e., restart the clock); it can only serve to pause a clock that has not yet fully run.  *Vroman v. Brigano*, 346 F.3d 598,  (6th Cir. 2001).  Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations.  *Id.*

Respondent does not consider Petitioner's submissions to the trial court that preceded the March 22, 2019, motion for relief from judgment.  Respondent disregards some of the submissions because they do not attack the judgment. Instead, they attack the Michigan Attorney General's attempts to collect restitution. The undersigned agrees that those attacks do not seek review of the judgment of sentence—at least not that part of the judgment of sentence pertinent to his habeas petition—and, therefore, do not toll the period of limitation under § 2244(d)(2)

Respondent disregards Petitioner's other submissions because there were not "properly filed."  The undersigned does not agree with that characterization with regard to Petitioner's filing of the motion to withdraw plea filed during February of 2018.

The Oakland County Circuit Court determined that Petitioner's motion to withdraw plea was procedurally improper.  (Oakland Cnty. Cir. Ct. Order, ECF No. 9-7, PageID.379.)  The state court noted that such motions must be filed within six months of sentencing.  (*Id*.)  The court concluded that Petitioner's motion was not filed within six months of sentencing[6] and, thus, the issues could only be raised by way of a motion for relief from judgment under Mich. Comp. Laws § 6.500 et seq.  (*Id*.) Because Petitioner's submission did not comply with the requirements for a motion for relief from judgment, the court refused to rule on the motion.  (*Id*.)

---

[6] The six-month deadline is derived from Michigan Court Rule 7.205(A)(2)(a).  Mich. Ct. R.  6.310(C)(1).  It is the same deadline used to determine the timeliness of applications for leave to appeal from a judgment.

In *Estelle v. McGuire*, 502 U.S. 62 (1991), the Court acknowledged that "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67–68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Thus, this Court may not take issue with the court's statement of state law or the proper application of that law to the facts. But the undersigned concludes that this Court may, and should, take issue with the state court's determination of the facts if that determination is unreasonable.

In the context of habeas review generally, where the state court has adjudicated a claim on the merits, 28 U.S.C. § 2254(d) precludes relief unless that adjudication resulted a decision (1) that is contrary to, or an unreasonable application of, clearly established federal law or (2) was based on an unreasonable determination of the facts in light of the evidence presented. With regard to the issues raised in Petitioner's motion to withdraw plea, however, the state court did not determine them on the merits. In fact, the state court did not determine them at all; the court declined to decide the motion because of procedural improprieties. The state court determined that the motion had not been filed within the deadline—six months from judgment— and that the motion did not satisfy the requirements of Michigan Court Rules 6.500 et seq., which the motion would have fallen under if it were filed too late. To the

extent the state court decided the motion at all, it was decided on a procedural ground. Under that circumstance, the undersigned concludes that the state court's findings of fact are not entitled to the deference required under § 2254(d)(2).

The state court's findings are still entitled to some deference, however.  Under 28 U.S.C. § 2254(e)(1), the state court's determinations of fact are "presumed to be correct."  That presumption can be overcome by clear and convincing evidence.  The undersigned concludes there is clear and convincing evidence in the record that Petitioner's motion to withdraw plea was not late.  The relevant judgment was entered on August 30, 2017.  Six months after that date, under the Michigan Court Rules, would be February 28, 2018.  Mich. Ct. R. 1.108(3).  Petitioner's motion was filed before February 28, 2018.  It was not late.  Therefore, it was properly filed under Rule 6.310(C)[7] and Petitioner was not required to satisfy the requirements for motions for relief from judgment.  Accordingly, the undersigned concludes that Petitioner's motion to withdraw plea tolled the period of limitation under the statute from the date it was filed—which was before Petitioner's judgment became final— until the date Petitioner's time to seek leave to appeal expired:  August 28, 2018.

---

[7] It may be that Petitioner was not entitled to raise issues that related to his initial plea, but was only entitled to raise issues related to 2017 parole violation plea.  That is the case with regard to appeals.  *See, e.g., People v. Pickett*, 215 N.W.2d 695, 701 (Mich. 1974); *People v. Kaczmarek*, 628 N.W.2d 484, 485 (Mich. 2001).  But the motion, measured by the date judgment was entered, was not late.

Petitioner's subsequent petition for writ of error *coram nobis* and motion for relief from judgment were filed less than one year after August 28, 2018.[8]  Those motions also sought collateral review of the judgment and, therefore, served to toll the period of limitation under the statute.  The trial court denied them on the merits. Petitioner sought leave to appeal that denial in the Michigan Court of Appeals and the Michigan Supreme Court.  The Michigan Supreme Court denied leave by order entered March 27, 2020.  As of that date, the period of limitations began to run again. It ran until Petitioner filed this petition on July 14, 2020, with almost three months remaining in the period of limitation.   Respondent's claim that the petition is untimely, therefore, is without merit.

## III.    Procedural default

Respondent next argues that this Court may not consider Petitioner's habeas issues based on the doctrine of procedural default.  When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review.   *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).   To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether (1) the petitioner failed to comply with an applicable

---

[8] Petitioner's petition for writ of error *coram nobis* was filed on February 13, 2019. (ECF No. 14-39.)  The trial court denied the petition on the merits the next day. (ECF No. 9-9.)  Petitioner's first motion for relief from judgment was filed on March 22, 2019.  (ECF No. 9-10.)  The trial court denied the motion on the merits on June 27, 2019.  The undersigned concludes that the  period of limitation ran from August 28, 2018, until February 13, 2019—169 days.

state procedural rule, (2) the state court enforced the rule so as to bar the claim, and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436–37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).  In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim.  *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

Petitioner raised his habeas issues for the first time in the state courts by way of his petition for writ of error *coram nobis* and his first motion for relief from judgment.   The trial court denied relief on the former request finding "that [Petitioner] is not entitled to the relief he seeks."  (Oakland Cnty. Cir. Ct. Order, ECF No. 9-9, PageID.382.)   The trial court denied relief on the latter request finding "Defendant is not entitled to the relief he seeks.  In so holding, the Court incorporates the arguments contained in the People's responsive pleading."  (Oakland Cnty. Cir. Ct. Order, ECF No. 9-16, PageID.917.)  The "People's responsive pleading," in turn, argued first that each of Petitioner's claims failed on the merits and, in the alternative, that Petitioner's claims were barred by the procedural rule that he must raise claims on appeal or establish cause and prejudice for the failure. (People's Opp'n to Def.'s Mot. for Relief from J., ECF No. 9-11.)

Where the state court has noted a defendant's possible violation of a procedural rule but does not expressly hold that the procedural rule applies, it does not constitute a procedural default. *Smith v. Cook*, 956 F.3d 377, 385 (6th Cir. 2020) (citing *Clinkscale v. Carter*, 375 F.3d 430, 441–42 (6th Cir. 2004) ("Although the decision unquestionably mentions [the procedural rule] and its requirements, it also emphasizes and relies upon [the merits].  It is unclear on what ground, or grounds, the court's judgment rested.  Under these circumstances, we are unable to say that the Ohio Court of Appeals' decision 'clearly and expressly states that its judgment rests on a state procedural bar.'" (quoting *Harris v. Reed*, 489 U.S. 255, 263(1989)); *Sanders v. Cotton*, 398 F.3d 572, 579–80 (7th Cir. 2005) (finding no procedural default where state court noted that "if an issue was available on direct appeal but not litigated, it is [forfeited]," but then "immediately proceeded to address and decide the merits" without directly saying that forfeiture had occurred)).  There is nothing in the trial court's orders, or the subsequent appellate decisions denying leave to appeal, to support Respondent's claim that Petitioner's issues were rejected based on a procedural rule.  Because it is impossible to determine whether the trial court's denials of either request for relief were based on Petitioner's failure to comply with an applicable procedural rule, Respondent's procedural default argument is meritless.

## IV.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).  An application for writ of habeas corpus on behalf of a

person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)).  This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court

adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster*, 324 F.3d at

429; *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001).  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–47 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review.  The federal court is not free to consider any possible factual source.  The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).  "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721.  Then, the petitioner's claim is reviewed *de novo*.  *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

The trial court considered Petitioner's Dodd-Frank preemption arguments when resolving his petition for writ of error *coram nobis*. The order states that Petitioner was not entitled to relief but does not specify whether the lack of entitlement was a merits or procedural determination. The court of appeals, however, clearly rejected the claim on the merits. (Mich. Ct. App. Order, ECF No. 9-14, PageID.713) ("The application for leave to appeal is DENIED for lack of merit in the grounds presented.").

The trial court considered all of Petitioner's habeas claims when resolving Petitioner's first motion for relief from judgment. The court indicated that it rejected those claims based on the arguments presented by the prosecution. The arguments presented were principally merits arguments with an alternative procedural argument, but the trial court did not specify whether it leaned particularly on the merits or procedural arguments when rejecting the claims.

In *Harrington*, 562 U.S. at 86, the Supreme Court stated: "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id*. at 99; *see also Johnson v. Williams*, 568 U.S. 289, 298 (2013). Petitioner offers nothing to rebut that presumption; therefore, the undersigned concludes that the state court resolved Petitioner's challenges on the merits and that § 2254(d) deference is appropriate. The undersigned notes, however, that *de novo* review would yield the same result: Petitioner's habeas challenges lack merit.

## A.    Preemption

Petitioner argues that his state criminal prosecution was preempted by Dodd-Frank.  Respondent argues that "the State has not found[] *any* clearly established federal law as determined by the Supreme Court holding that Dodd Frank preempts—and thereby prevents—state prosecution for the defrauding of people vis-à-vis a mortgage scam."  (Answer, ECF No. 8, PageID.74) (emphasis in original).  The undersigned, likewise, has not found any federal law, clearly established by the Supreme Court or otherwise, that suggests that Dodd-Frank preempts criminal prosecutions for fraud or for the conduct of a criminal enterprise based on a pattern of fraud.  Accordingly, Petitioner cannot show that the state court's rejection of his preemption claim is contrary to, or an unreasonable application of, clearly established federal law and he is not entitled to habeas relief on the claim.

## B.    Restitution

Review of the reams of paper Petitioner has submitted in the state courts reveals that he is most concerned with the amount of restitution ordered by the Oakland County Circuit Court.  In *Washington v. McQuiggin*, 529 F. App'x 766 (6th Cir. 2013), the Sixth Circuit Court of Appeals considered the limits of habeas jurisdiction with regard to orders to pay fines or restitution.  The court explained that under § 2254 subject matter jurisdiction exists only for claims that a person is "in custody" in violation of the Constitution or laws of the United States.  *Washington*, 529 F. App'x at 772–73 (citing *Dickerson v. United States*, 530 U.S. 428, 439 n.3 (2000) (quoting 28 U.S.C. § 2254(a)).  Orders compelling the payment of fines or restitution, therefore, "fall outside the scope of the federal habeas statute because they do not

satisfy the "in custody" requirement of a cognizable habeas claim." *Id*. at 773; *see also United States v. Watroba*, 56 F.3d 28 (6th Cir. 1995) (holding that Section 2255 does not grant subject matter jurisdiction over restitution orders); *Michaels v. Hackel*, 491 Fed. App'x 670, 671 (6th Cir. 2012) (stating that a fine is not cognizable under Section 2254 and citing *Watroba*, 56 F.3d at 29); *Kennedy v. Nagy*, No. 18-1463, 2018 WL 3583212, at *2 (6th Cir. July 12, 2018) ("Kennedy argues that the trial court erred by ordering him to pay restitution, court costs, and attorney's fees without first considering his financial situation . . . . [T]hese claims are not cognizable in a federal habeas proceeding because noncustodial punishments do not satisfy the 'in custody' requirement of § 2254."). That a petitioner might be subject to a custodial penalty does not make available to him collateral relief from a noncustodial punishment such as an order to pay fines or restitution. *Washington*, 529 F. App'x at 773. Petitioner's claims that challenge the constitutionality of Petitioner's restitution order, therefore, are not cognizable on habeas review.

## C.    Prosecutorial misconduct

Petitioner argues that his due process rights were violated by the prosecutor's misconduct. Petitioner offers multiple examples. He contends the prosecutor acted inappropriately by charging him with a state crime despite the requirements of the preemptive Dodd-Frank statute. (Pet. for Writ of Error *Coram Nobis*, ECF No. 14-39, PageID.1507–1509.) He also complains that the prosecutor bribed and threatened the mortgagors to secure their cooperation (*Id*., PageID.1509) and "manufactured" the mortgagors' complaints and their victim's rights forms (*Id*., PageID.1510). When Petitioner presented the arguments for the first time, the trial court rejected them

26

because he "was not entitled to the relief he seeks." (Oakland Cnty. Cir. Ct. Order, ECF No. 9-9, PageID.382.)  When Petitioner presented the arguments the second time in his motion for relief from judgment, the judge adopted the arguments of the Michigan Attorney General's Office, which noted that Dodd-Frank does not preempt or otherwise impact Petitioner's criminal prosecution and Petitioner did not provide any record support for his claims regarding the prosecutor's alleged misdeeds relating to the mortgagors.

When a petitioner makes a claim of prosecutorial misconduct, "the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  For relief to be granted, the prosecutorial misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  The Court has emphasized a series of factors to be evaluated in determining whether prosecutorial misconduct so infected the trial as to amount to a violation of due process:  (1) whether the comments were isolated or pervasive, (2) whether they were deliberately or accidentally placed before the jury, (3) the degree to which the remarks had a tendency to mislead and prejudice the defendant, (4) whether the prosecutor manipulated or misstated the evidence, (5) the strength of the overall proof establishing guilt, (6) whether the remarks were objected to by counsel and (7) whether a curative instruction was given by the court. *See Darden*, 477 U.S. at 182–

83; *United States v. Young*, 470 U.S. 1, 12–13 (1985); *Donnelly*, 416 U.S. at 646–47; *Berger v. United States*, 295 U.S. 78, 84–85 (1935).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645). Thus, to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington*, 562 U.S. at 103).

Petitioner has failed to make the necessary showing with regard to any of his complaints regarding the prosecutor's conduct. With regard to alleged improprieties because of Dodd-Frank preemption, for the reasons stated above, Petitioner's arguments have no merit. With regard to alleged improprieties relating to communications with mortgagors or the mortgagors' complaints or victim's rights statements, the circuit court's judge's conclusion that there is no record support for Petitioner's allegations is well-founded on the record. There is nothing in the record to support Petitioner's claims. In short, Petitioner has failed to show that the state

court's determinations of fact are unreasonable on the record or that the state court's rejection of his prosecutorial misconduct claim is contrary to, or an unreasonable application of, clearly established federal law. Petitioner is not entitled to habeas relief on this claim.

### D. Petitioner's plea

#### 1. Plea validity

Petitioner's direct attack on the state court's restitution order is not cognizable on habeas review; but there are aspects of his restitution challenges that implicate the validity of his plea. A valid guilty plea bars habeas review of most claims alleging antecedent violations of constitutional rights. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267. A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969).

Petitioner's Dodd-Frank preemption argument is presented as a jurisdictional challenge; it simply has no merit. Thus, the only means available for challenging his conviction is to claim that his plea is invalid, i.e., it was not knowingly and voluntarily entered into. *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt. While courts may consider whether a factual basis for a guilty plea exists in their assessments of its validity, it has generally been held that the Constitution does not require that they ensure such a basis exists.  *See Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993) ("'Strong evidence of guilt' may suffice to sustain a conviction on an *Alford* plea, and may be essential under Rule 11 [of the Federal Rules of Criminal Procedure], but it is not necessary to comply with the Constitution.") (quoting *Alford*, 400 U.S. at 37); *see also Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000); *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995) (citing *Higgason*, 984 F2d at 208); *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983); *Thundershield v. Solem*, 565 F.2d 1018 (8th Cir. 1977); *Edwards v. Garrison*, 529 F.2d 1374, 1376 (4th Cir. 1975); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971).

To find a guilty plea constitutionally valid, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941).  The plea

30

must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56–57.

31

Petitioner's arguments could be interpreted as claiming that his plea was not voluntary because he believed that there was "an agreement to agree" to the final restitution amount.[9]  The plea hearing transcript does not support Petitioner's belief. Counsel and the prosecutor described the terms of the agreement, and the judge and the parties explored the scope of the terms as well; there was no term regarding Petitioner's agreement before a restitution amount could be imposed.  (Plea Tr., ECF No. 9-2, PageID.115–130.)  To the contrary, as to restitution, the record shows that determination of restitution was up to the court.  If the parties agreed with respect to a particular identified victim, the damage they suffered would be included; if the parties did not agree, the court would conduct a hearing to determine if the damage they suffered should be included.  (*Id.*, PageID.124–125.)  Petitioner represented to the court that he understood the agreement as explained on the record.  (*Id.*, PageID.128.)  He specifically represented that he understood the "money obligation." (*Id.*, PageID.140.)

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.3d at 326).  Where the transcript is

---

[9] This argument can be gleaned from Petitioner's submissions only with a particularly liberal reading.  He actually leans out much further by claiming that there clearly was such an agreement and the court and the prosecutor breached it.  That argument is addressed separately below.

adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Garcia,* 991 F.2d at 326.  A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings.  *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

Under settled Sixth Circuit authority, a petitioner's responses to the trial judge, given under oath at the plea hearing, preclude a later assertion that he was unaware of the consequences of his plea or that there was a specific sentence agreement as part of his plea bargain.  In *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986), the trial court inquired concerning the terms of any plea bargain, received a response from the prosecutor on the record, and received denials from defense counsel, the prosecutor, and the defendant concerning the existence of any other terms.  The Sixth Circuit held that where the trial court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry."  781 F.2d at 90 (quoting *Moore v. Estelle*, 526 F.2d 690, 696–97 (5th Cir. 1976)).

The court again addressed this issue in *United States v. Todaro*, 982 F.2d 1025 (6th Cir. 1993), also a § 2255 case.  In *Todaro*, the defendant attempted to attack his guilty plea, claiming that his attorney had promised him that he would be sentenced to probation if he pled guilty.  The defendant had testified at the plea colloquy, however, that no other promises had been made to him, other than those stated in the plea agreement.  982 F.2d at 1026.  Consequently, the Sixth Circuit was again faced with a situation in which a defendant's post-conviction allegations were directly contrary to his statements at the plea hearing.  Relying on *Baker*, the court reiterated its earlier holding, under which a defendant is bound by his statements in response to the trial court's inquiry, where there has been a careful plea colloquy.

Petitioner's claim that the plea agreement included a term that restitution could not be imposed without his agreement is belied by the description of the terms at the plea hearing.  The prosecutor stated that if the parties agreed with respect to a victim, the damages would be included in the restitution amount but if the parties did not agree, the court would hold a hearing and determine whether the damages would be included in the restitution amount.  That directly contradicts Petitioner's claim that a failure to agree effectively precluded the court from ordering restitution.  There is simply no conceivable way Petitioner could have listened to and understood those terms and come out of the hearing believing that his agreement was required before the court could order restitution in any amount.

Petitioner is bound by his statements.  The plea colloquy forecloses his present claim.  The state court's rejection of that claim is well-founded on the record and is neither contrary to, nor an unreasonable application of, clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief on any claim that his plea was not voluntary because of the restitution order.

### 2.    Breach of the plea agreement

Alternatively, one might interpret Petitioner's arguments regarding his plea as a claim that the plea agreement had been breached when the court ordered a restitution amount without Petitioner's concurrence[10] rather than a claim, as discussed above, that his plea was not voluntary because Petitioner was not aware that the plea did not include that term.  That claim, however, also fails—and for the same reason.  There is no record support for Petitioner's claim that the plea required his agreement to the restitution amount.

The Sixth Circuit has recognized that a state prosecutor's breach of a plea bargain is a violation of the federal constitution cognizable on habeas review.  *Dixon v. Alexander*, 741 F.2d 121, 123 (6th Cir. 1984).  The government may not openly breach a plea agreement.  *See Mabry*, 467 U.S. at 509 ("[W]hen the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand[.]").  As the

---

[10] Petitioner states:  "I agreed to be sentenced with 'Restitution to be determined' based upon the court and prosecutors' promise not to settle restitution without my involvement and written approval."  (Pet'r's Mot. for Relief from J., ECF No. 14-43, PageID.1568.)

Supreme Court stated in *Mabry*, "'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.'"  *Id.* at 509 (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)).

Plea agreements are contractual in nature.  In interpreting and enforcing them, courts use traditional principles of contract law.  *See Smith v. Stegall*, 385 F.3d 993, 999 (6th Cir. 2004) (citing *United States v. Robison*, 924 F.2d 612, 613 (6th Cir. 1991)).

> One fundamental principle of contract interpretation is that "primary importance should be placed upon the words of the contract. Unless expressed in some way in the writing, the actual intent of the parties is ineffective, except when it can be made the basis for reformation of the writing."  11 Williston on Contracts § 31:4 (4th ed. 2000).  Consistent with the principle articulated by Williston, this court has held that the state will be held to the literal terms of the plea agreement.

*Id.* (citing *United States v. Mandell*, 905 F.2d 970, 973 (6th Cir. 1990)).  The content of a plea agreement and what the parties agreed to is a question of fact.  *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002).

There is nothing in the plea transcript or in the entire state court record that supports Petitioner's contention that there was an agreement that Petitioner would have to sign off on the final restitution amount.  Accordingly, the state court's rejection of Petitioner's contention is neither contrary to, nor an unreasonable application of, clearly established federal law and Petitioner is not entitled to habeas relief on such a claim.

### E.   Ineffective assistance of counsel

Over the course of Petitioner's many post-judgment state court submissions, he raises several claims that his counsel rendered ineffective assistance.  As he has raised the claims, some relate to counsel's failures in representing Petitioner before, but unrelated to, the plea; some relate to the plea itself; and others relate to counsel's involvement in negotiating resolution of the restitution amount.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011).   In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

### 1.    Pre-plea ineffective assistance claims

Some of Petitioner's ineffective assistance of counsel claims relate to counsel's failures before Petitioner entered his plea.   Petitioner's claim that counsel should have challenged the prosecution based on Dodd-Frank preemption falls into that category.   Claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by that plea.   *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett*, 411 U.S. at 267. The United States Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.   When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.   He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267.  Consequently, a knowing and voluntary guilty plea waives all non-jurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel that does not relate to the voluntariness of the plea.  *See U.S. v. Stiger*, 20 F. App'x 307, 308–09 (6th Cir. 2001).

At least some of Petitioner's claims of ineffective assistance do not attack the voluntary or intelligent nature of his plea by showing that counsel's advice was inadequate, but instead relate to earlier alleged constitutional deprivations. Petitioner claims that trial counsel failed to raise the Dodd-Frank preemption argument, failed to investigate the law and facts underlying the prosecutor's case, and failed to adequately investigate the claims of the mortgagors.  To the extent those claims relate to counsel's conduct before Petitioner entered his plea, the claims have been waived by his subsequent guilty plea.  *See Stiger*, 20 F. App'x at 308–09; *see also United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (pre-plea ineffective assistance of counsel claims are waived).  The state court's rejection of Petitioner's ineffective assistance claims that fall into this category is not contrary to, or an unreasonable application of clearly established federal law.  Thus, Petitioner is not entitled to habeas relief on those claims.

### 2. Ineffective assistance of counsel claims relating to the plea

The habeas petition does not specifically say that counsel misadvised Petitioner regarding the nature of the plea agreement with regard to restitution, but Petitioner raised such claims in the state courts.  For example, in his state court pleadings, Petitioner states:

1.    Counsel "lied & misle[]d [Petitioner] about his sentencing guidelines." (Pet'r's Mot., ECF No. 9-10, PageID.394.)

2.    Counsel agreed to represent Petitioner for a total fee and then demanded an additional $250,000 to continue the representation; counsel misrepresented the sentence Petitioner might receive, counsel informed Petitioner that he would never pay restitution. (Pet'r's Mot., ECF No. 14-25, PageID.1433–1434.)

3.    That his attorney promised "restitution would be less than $50,000.00 . . . ." (Pet'r's Mot. for Relief from J., ECF No. 14-43, PageID.1571); *see also* (Pet'r's Mot. to Set Aside Sentence, No. 14-42, PageID.1553.) [11]

4.    "I was promised, on the record, by . . . paid counsel . . . that I would be a party to the restitution negotiations while I was incarcerated and it could not be settled without my written authorization . . . ." (Pet'r's Mot. for Relief from J., ECF No. 14-43, PageID.1572–1573.)

5.    "My attorney . . . promised me I would have complete control over [the initial $250,000.00 restitution payment] and it could not be disbursed without my written authorization." (Pet'r's Mot. for Relief from J. ECF No. 14-43, PageID.1573.)

6.    "Attorney Kriger agreed on the record and through numerous emails he needed written permission from me to settle restitution." (Pet'r's Mot., ECF No. 14-47, PageID.1600.)

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58. Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id*. In analyzing the prejudice prong, the focus is on whether counsel's constitutionally

---

[11] There are times when Petitioner's arguments suggest that the promises and misrepresentations were not before the plea, but after the plea and before sentencing. (Pet'r's Mot. to Set Aside Sentence, ECF No. 13-43, PageID.1306). If that is the case, the alleged ineffective assistance could not possibly have resulted in Petitioner entering the plea.

deficient performance affected the outcome of the plea process.  "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id*. at 59.

Petitioner's plea-related ineffective assistance of counsel claims fail on both prongs of the *Strickland* analysis.  First, there is nothing in the record that supports Petitioner's contentions that counsel made the alleged promises and representations before Petitioner entered his plea.  Second, if Petitioner, in fact, went into the plea hearing with a misunderstanding of the restitution obligation based on counsel's alleged promises and representations, the hearing corrected any misunderstanding.  At the hearing it was made clear that if there was not agreement regarding any particular victim or the damage the victim suffered, the matter would be resolved by the trial court at a hearing; it would not simply pend indefinitely until Petitioner agreed with the resolution.  Therefore, Petitioner cannot show that, but for counsel's error, he would not have pleaded guilty, because with complete information regarding the nature of the unresolved restitution obligation Petitioner entered his plea anyway.  The state court's rejection of the claims is neither contrary to, nor an unreasonable application of, clearly established federal law.  Petitioner is not entitled to habeas relief on these claims.

### 3.    Ineffective assistance after sentence while resolving the restitution amount

It would certainly make sense that, if a constitutional challenge to restitution does not raise a cognizable habeas claim, an ineffective assistance claim directed solely to counsel's efforts regarding restitution would likewise not raise a cognizable habeas claim.  That is certainly well-settled in every circuit, other than the Sixth Circuit Court of Appeals.

In *Weinberger v. United States*, 268 F.3d 346 (6th Cir. 2001), the court read *Ratliff v. United States*, 999 F.2d 1023, 1025–27 (6th Cir. 1993), to permit a § 2255 challenge to a restitution order if it is based on a claim of ineffective assistance of counsel.  That is certainly an unusual reading of *Ratliff*.  That case considered whether a federal prisoner had waived his restitution challenge if he did not raise it on direct appeal, but raised it for the first time in a petition under § 2255.  The *Ratliff* court concluded that the federal prisoner would not have waived the claim if he could show cause for the failure to raise it and prejudice.  Petitioner Ratliff offered as cause the ineffective assistance of his appellate counsel because counsel refused to raise the restitution challenge.  The court concluded that Ratliff had not waived his restitution challenge because he demonstrated cause and prejudice.  The *Weinberger* court interpreted that resolution as "allowing a petitioner to contest a restitution order § 2255 based on a meritorious ineffective assistance of counsel claim."  *Weinberger*, 268 F.3d at 351 n.1.

42

Differences between petitions under § 2254 and § 2255 counsel against applying *Weinberger* to conclude that Petitioner's ineffective assistance claims relating to restitution give rise to a cognizable habeas claim here. The *Weinberger* court's analysis depended upon the specific scope of review for § 2255 motions. Such motions are proper to contest, among other things, "a sentence imposed outside the statutory limits." *Id*. at 351. That was the claim made by Petitioner Weinberger, the restitution amount was outside the statutory limits because the court imposed it without proper consideration of Weinberger's ability to pay. The *Weinberger* court explained that "sentencing challenges must be made on direct appeal or they are waived." *Id*. As in *Ratliff*, however, the *Weinberger* court noted that such a waiver could be overcome where an ineffective assistance of counsel claim establishes cause for the failure to raise the issue on appeal and prejudice.

The "waiver" issue that exists for § 2255 motions does not exist for § 2254 petitions. Thus, the *Weinberger* exception to the general rule that challenges to restitution are not cognizable on habeas review is not applicable to Petitioner's case. Moreover, even if it were applicable, the Supreme Court has never recognized such an exception—in § 2254 or § 2255 cases—so there is no clearly established federal law that compels that result. Accordingly, Petitioner cannot show that the state court's rejection of his restitution-related ineffective assistance of counsel issues is contrary to, or an unreasonable application of, clearly established federal law. Petitioner is accordingly not entitled to habeas relief on this claim.

## V.    Certificate of appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I have examined each of Petitioner's claims under the *Slack* standard.  I find that reasonable jurists could not conclude that this Court's denial of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated:  July 9, 2021                          /s/ Phillip J. Green
                                              PHILLIP J. GREEN
                                              United States Magistrate Judge

## **NOTICE TO PARTIES**

ANY OBJECTIONS to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).